IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LISA McKINLEY TULLIS, # 280307, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13cv858-WHA |
| | ) | (WO) |
| BOBBY BARRETT, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter concerns a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254

filed by Alabama inmate Lisa McKinley Tullis ("Tullis").  Doc. No. 1.[1]

## I.   BACKGROUND

Trial and Sentencing

In March 2010, a Houston County grand jury indicted Tullis for attempted murder, in

violation of §§ 13A-6-2 and 13A-4-2, Ala. Code 1975.  The case went to trial in August 2011.

The Alabama Court of Criminal Appeals summarized the trial evidence as follows:

> The State's evidence presented at trial indicated the following. On
> February 28, 2010, Denise McCrae and her husband, Willie Earl Miller, gave
> Cheryl Dozier a ride to the Newberry Street area so that Dozier could visit an
> exboyfriend, Marion Dawsey. McCrae and Miller dropped Dozier off outside
> Lenton McIntrye's residence. Several people were outside the residence,
> including Tullis.  After Dozier got out of the vehicle, Tullis, carrying a metal pipe
> similar to a fencepost of a chain-link fence, approached Dozier. Tullis struck
> Dozier in the head with the pipe.  Tullis said, "[B]itch I told you I'm going to kill
> you for talking about my dead mother." (R. 47.)  Tullis struck Dozier again with
> the pipe. Dozier staggered away from Tullis. McCrae and Miller, seeing the attack
> as they were about to drive away, stopped to assist Dozier. Miller told Tullis, who

---

[1] Document numbers ("Doc. No.") are those assigned by the Clerk of Court in this civil action.
Page references are to those assigned by CM/ECF.

was walking up the street after Dozier, "Lisa, don't kill the girl." (R. 48, 51.) Tullis replied, "[Y]ou better go get her, 'cause I'm going to kill her." (R. 51.) Dozier got into the vehicle; her head was gushing blood. Dozier was subsequently taken to the hospital where she received treatment for injuries – lacerations to her scalp – and released approximately four hours later.

Marion Dawsey, Dozier's exboyfriend, testified that approximately a week before the day of the attack, Tullis told him to "tell [his] bitch when he saw her, she was going to 'F' her up." (R. 143.)

Tullis testified at trial and admitted to attacking Dozier. Tullis testified that she and Dozier had been friends, but that their relationship had deteriorated after Tullis evicted Tullis's boyfriend from her residence, which, Tullis said, upset Dozier. Tullis testified that on the day before the attack, she and Dozier were at McIntyre's residence and that Dozier waved a hammer in her face and told her that "she was going to send [her] to [her] dead mama." (R. 112.) According to Tullis, when Dozier returned to McIntyre's residence the next day, Dozier's facial expression "was just look, bitch, what you looking at, turning up her nose and all that." (R. 114.) Tullis testified that she approached Dozier and asked her if she meant what she said the day before and that Dozier said, "[Y]eah, bitch, I meant it." (R. 115.) Tullis testified that she thought Dozier was going to get her hammer out of her purse so Tullis hit her with the pipe. Tullis testified that she did not intend to kill Dozier and that no one caused her to stop attacking Dozier, but, rather, Tullis stopped the attack on her own. Tullis testified that if she did threaten to kill Dozier during the attack, she did not mean it.

Doc. No. 14-9 at 2-4.

On August 11, 2011, the jury found Tullis guilty of attempted murder.[2] On September 21, 2011, the trial court sentenced her to 27 years' imprisonment.

<u>Direct Appeal</u>

Tullis appealed, arguing that the evidence was insufficient to sustain her conviction. Doc. No. 14-6. On June 2, 2012, by unpublished memorandum opinion, the Alabama Court of Criminal Appeals affirmed her conviction and sentence. Doc. No. 14-9. Tullis did not apply for

---

[2] The trial court instructed the jury on attempted murder and the lesser included offense of second-degree assault.

rehearing, and on July 12, 2012, the Alabama Court of Criminal Appeals entered a certificate of judgment.  Doc. No. 14-10.

Rule 32 Petition

On October 30, 2012, Tullis, proceeding *pro se*, filed a petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure, in which she asserted the following claims:

1.   Her equal protection rights were violated because she was charged and sentenced differently from other persons similarly situated.  Doc. No. 14-23 at 16-18.

2.   Various documents, including the original offense report, contained incorrect information from unreliable witnesses.  *Id*. at 18-19.

3.   On the day before trial, the State moved to use the Habitual Felony Offender Act ("HFOA") against her at sentencing.  *Id*. at 19.

4.   Her inmate summary sheet with the Alabama Department of Corrections ("ADOC") contradicts the trial court's sentencing order because it indicates she owes court costs and restitution.  *Id.*

5.   She should not be required to pay attorney's fees due to "ineffective counsel and an Alabama Bar complaint."  *Id.*

6.   The State's witnesses, including the victim, perjured themselves by giving false statements to the police, and two witnesses perjured themselves by filing a "false motion" to have her bond revoked before trial.  *Id.* at 19-20.

7.   Her 27-year sentence constitutes cruel and unusual punishment and was too harsh relative to the injuries her victim suffered.  *Id.* at 20, 29-30, 34.

8.   Her trial counsel rendered ineffective assistance by failing to (a) introduce the victim's medical records, (b) request that a mental health examination be performed on her, and (c) move for a mistrial based on a juror's alleged text messaging during a lunch break.  *Id.* at 20, 26-29.

9.   Her appellate counsel rendered ineffective assistance by failing to properly prepare her appeal and failing to apply for rehearing.  *Id.* at 20-21.

10.    Her double jeopardy rights under the Fifth Amendment were violated when she was indicted twice for the same offense and her bond was raised in the second indictment. *Id.* at 21-22, 33-34.

11.    The prosecution improperly withheld evidence regarding the victim's unruly behavior in the hospital after the attack. *Id.* at 22.

12.    Two of the State's witnesses were "under the influence" at the time of the offense and gave police false statements regarding the offense. *Id*. at 22-23.

13.    False statements in her arrest report appear in her ADOC records and constitute "slander." *Id.* at 23-24.

14.    She suffered from battered woman syndrome because of various traumatic incidents she suffered during her childhood and adult life. *Id.* at 24-25.

15.    The father of one of the State's witnesses should have been arrested because he sold alcohol illegally out of his home, and on the day of the offense, he sold alcohol to the victim when she was visibly intoxicated. *Id.* at 25.

16.    The day before the offense, the victim threatened to kill her. *Id*. at 25-26.

17.    Her sentence was illegal because four prior misdemeanor convictions were used to enhance her sentence under the HFOA. *Id*. at 26.

18.    She was not competent to stand trial, and mental health examination should have been performed on her. *Id.* at 26-27.

19.    There was "discriminatory jury selection" because only one African-American sat on the jury. *Id*. at 27.

20.    There was "jury tampering" because an unnamed female juror was text messaging about the trial during a lunch break. *Id.*

21.    The trial court erred by failing to *sua sponte* declare a mistrial based on the juror's text messaging. *Id.* at 27-28.

22.    The verdict was improper because a juror did not know the meaning of the word "effectuation" as used by the trial court. *Id*. at 28.

23.    The trial court, upon receiving an anonymous tip that a juror was text messaging, did not immediately inform the parties, but instead waited until after several witnesses had testified, and the trial court then improperly

persuaded her counsel to question female jurors about the allegation of text messaging rather than to move for a mistrial. *Id*. at 28-29.

24.     The trial court mistakenly read the definition of reckless murder to the jury before the prosecutor brought the mistake to the court's attention. *Id*. at 29.

25.     One of the State's witnesses testified falsely against her because she had reported him to the authorities for running a "disorderly house." *Id.* at 30.

26.     Several people, including the State's witnesses, the prosecutor, and possibly her own attorneys, conspired against her and, accordingly, should be prosecuted. *Id*. at 30-33.

27.     Her Sixth Amendment rights were violated because several witnesses she wanted to testify on her behalf were not subpoenaed. *Id.* at 33-34.

28.     Her Fourteenth Amendment rights were violated because she did not receive a fair trial. Specifically, she was arrested on the second indictment during an arraignment hearing and thus did not receive a fair hearing; only one African-American was on the jury; and she was treated differently from other similarly situated defendants. *Id*. at 34.

On November 19, 2012, after receiving a response from the State, the trial court entered an order denying Tullis's Rule 32 petition. *See* Doc. No. 14-23 at 39-41.

Appeal from Denial of Rule 32 Petition

Tullis appealed, reasserting the claims in her Rule 32 petition, except for her claims that (1) her appellate counsel rendered ineffective assistance; (2) she suffered from battered woman syndrome; (3) there was "jury tampering" because a juror was text messaging during a lunch break; and (4) one of the State's witnesses testified falsely against her because she had reported him for running a "disorderly house." Doc. No. 14-15.

On April 26, 2013, the Alabama Court of Criminal Appeals issued an unpublished memorandum opinion affirming the trial court's judgment denying Tullis's Rule 32 petition. Doc. No. 14-17. The state appellate court first found that Tullis had abandoned her Rule 32 claims not reasserted in her appeal. *Id.* at 4. The court then found that the following claims by

Tullis were procedurally barred under Rule 32.2(a)(5) of the Alabama Rules of Criminal

Procedure, because they could have been, but were not, raised on direct appeal:

- that her equal protection rights were violated because she was charged and sentenced differently from other persons similarly situated;

- that various documents, including the original offense report, contained incorrect information provided by unreliable witnesses;

- that her sentence constitutes cruel and unusual punishment and was too harsh relative to the injuries the victim suffered;

- that her double jeopardy rights under the Fifth Amendment were violated because she was indicted twice for the same offense and her bond was raised in the second indictment;

- that there was discriminatory jury selection because only one African-American sat on the jury;

- that the trial court erred by failing to *sua sponte* declare a mistrial based on a juror's text messaging during a lunch break;

- that the verdict was improper because a juror did not know the meaning of the word "effectuation" as used by the trial court;

- that the trial court, upon receiving an anonymous tip that a juror was text messaging, did not immediately inform the parties, but instead waited until after several witnesses had testified, and the trial court then improperly persuaded her counsel to question jurors about the allegation of text messaging rather than to move for a mistrial; and

- that the trial court mistakenly read the definition of reckless murder to the jury before the prosecutor brought the mistake to the court's attention.

*Id*. at 4-5.[3]

The state appellate court found that the following claims by Tullis were insufficiently

pleaded under Ala.R.Crim.P. 32.3 and 32.6(b):

---

[3] Rule 32.2(a)(5) provides that a petitioner will not be given postconviction relief based upon any ground that could have been, but was not, raised on appeal.  Ala.R.Crim.P. 32.2(a)(5).

- that on the day before trial, the State moved to use the HFOA against her at sentencing;[4]

- that the prosecution improperly withheld evidence regarding the victim's unruly behavior in the hospital after the attack;

- that the day before the offense, the victim threatened to kill her;

- that her Sixth Amendment rights were violated because several witnesses she wanted to testify on her behalf were not subpoenaed; and

- that her Fourteenth Amendment rights were violated because she did not receive a fair trial.

*Id*. at 5-6.[5]

The state appellate court found that the following claims by Tullis were not cognizable grounds for relief under Ala.R.Crim.P. 32:

- that her ADOC inmate summary sheet contradicts the trial court's sentencing order because it indicates she owes court costs and restitution;

- that she should not be required to pay attorney's fees due to "ineffective counsel and an Alabama Bar complaint";

- that the State's witnesses perjured themselves by giving false statements to the police, and two witnesses perjured themselves by filing a "false motion" to have her bond revoked before trial;

---

[4] The appellate court observed that Tullis failed to plead any facts indicating how the State's actions in this regard affected the outcome of the trial or how she was prejudiced by the State's actions.  Doc. No. 14-17 at 6.

[5] Rule 32.3. provides that a petitioner "shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. …" Ala.R.Crim.P. 32.3.  Rule 32.6(b) provides that each claim in the Rule 32 petition "must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds" and that "[a] bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." Ala.R.Crim.P. 32.6(b).

– that two of the State's witnesses were "under the influence" at the time of the offense and gave the police false statements regarding the offense;

– that false statements in her arrest report appear in her ADOC records and constitute "slander";

– that the father of one of the State's witnesses should have been arrested because he sold alcohol illegally out of his home, and on the day of the offense, he sold alcohol to the victim when she was visibly intoxicated; and

– that several people conspired against her and, accordingly, should be prosecuted.

*Id.* at 7.[6]

The state appellate court also rejected Tullis's claims of ineffective assistance of trial counsel, holding that Tullis had failed to satisfy the two-prong test for claims of ineffective assistance of counsel established by the Supreme Court in *Strickland v. Washington*, 466 U.S.

---

[6] Rule 32.1 of the Alabama Rules of Criminal Procedure limits the grounds for which a convicted defendant may petition for postconviction remedies to the following:

(a) The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

(b) The court was without jurisdiction to render judgment or to impose sentence.

(c) The sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law.

(d) The petitioner is being held in custody after the petitioner's sentence has expired.

(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court….

(f) The petitioner failed to appeal within the prescribed time from the conviction or sentence itself or from the dismissal or denial of a petition previously filed pursuant to this rule and that failure was without fault on the petitioner's part.

Ala.R.Crim.P. 32.1.

668 (1984). *Id.* at 8-10. First, the state appellate court rejected Tullis's claim that her trial counsel was ineffective for failing to introduce the victim's medical records, because "[a] review of Tullis's trial transcript shows that the victim's medical records were introduced." *Id.* at 8. Second, the court rejected Tullis's claim that her trial counsel was ineffective for failing to request a mental health evaluation, because Tullis "failed to allege any facts indicating that her counsel was aware or should have been aware that she suffered from a mental deficiency." *Id.* at 9. Third, the court rejected Tullis's claim that her trial counsel was ineffective for failing to request a mistrial based on juror misconduct. *Id.* at 9-10. The basis of this claim was that a female juror violated the trial court's instructions by sending a text message about the trial during the jury's lunch break. *Id.* The state appellate court found:

> At trial, the circuit court was informed by an anonymous telephone call that a female juror had sent a text message asking for the definition of murder. The circuit court informed both parties several hours later. The parties agreed to poll the female jurors as to the alleged violation. Each juror denied sending any text message.

> Because each female juror denied sending any text message and the only indication of wrongdoing was an anonymous telephone call, Tullis's counsel did not have grounds upon which to request a mistrial. ... The circuit court investigated the alleged misconduct and found none to exist. Accordingly, there were no grounds to seek a mistrial, and counsel cannot be held ineffective for failing to raise baseless motion. ... Consequently, the circuit court did not err in dismissing this claim.

*Id.*

The state appellate court next rejected Tullis's claim that her sentence was illegal because four prior misdemeanor convictions were used to enhance her sentence under the HFOA. *Id.* at 10. The court found:

> Tullis was found guilty of attempted murder. Attempted murder is a Class A felony. *See* § 13A-4-2 (d) (1), Ala. Code 1975. A Class A felony carries a penalty range of "life or not more than 99 years or less than 10 years." § 13A-5-6(a)(1), Ala. Code 1975. Tullis received a sentence of 27 years in prison, which

followed the sentencing recommendation of a medium to maximum sentence. Had the circuit court treated her 4 misdemeanors as felonies under the HFOA, as Tullis alleges, it would have been required to sentence Tullis to life or life without the possibility of parole. *See* § 13A-5-9(c)(3), Ala. Code 1975. Further, a review of the record from Tullis's sentencing hearing shows that the circuit court did not consider any of Tullis's past misdemeanors under the HFOA. Because this claim is refuted by the record, the circuit court did not err by dismissing it.

*Id.*

Finally, the state appellate court rejected Tullis's claim that she was not mentally competent to stand trial. *Id.* at 10-12. The court found:

Here, Tullis argued she "was never ask[ed] of her mental state of mind" nor was she ever "requested to perform or have a mental evaluation performed on her." (C. 26). Tullis did not allege that a mental health issue rendered her incapable of aiding in her defense, consulting with counsel, or understanding the proceedings. Accordingly, she failed to meet her burden to plead facts that, if true, would establish she was mentally incompetent to stand trial.

*Id.* at 12.

Tullis applied for rehearing, which was overruled by the Alabama Court of Criminal Appeals on May 31, 2013. Doc. Nos. 14-18 and 14-19. She then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on August 16, 2013. Doc. Nos. 14-20 and 14-21. A certificate of judgment was entered that same date. Doc. No. 14-21.

<u>Tullis's § 2254 Petition</u>

On November 22, 2013 (Doc. No. 1), Tullis initiated this habeas action by filing a § 2254 petition asserting the following claims:

1.   The evidence was insufficient to sustain her conviction for attempted murder. Doc. No. 1 at 10, 22-23, 40, 58-60, 122; Doc. No. 1-5 at 3.

2.   She was indicted twice in violation of her double jeopardy rights under the Fifth Amendment. Doc. No. 1 at 5, 42-43; Doc. No. 1-1 at 4-11.

3.   The trial court erred by instructing the jury on reckless murder. Doc. No. 1 at 8; Doc. No. 1-4 at 68.

4.     Her Sixth Amendment rights were violated because only one African-American sat on the jury; witnesses perjured themselves; and she was not given a mental health evaluation.  Doc. No. 1-2 at 3-7, 31-33; Doc. No. 1-5 at 2-3.

5.     Her Eighth Amendment rights were violated because her sentence was unduly harsh.  Doc. No. 1 at 5; Doc. No. 1-2 at 32; Doc. No. 1-3 at 3-4.

6.     Her equal protection rights were violated because she was charged and sentenced differently from other persons similarly situated.  Doc. No. 1 at 5, 29-31; Doc. No. 1-3 at 7; Doc. No. 1-4 at 63.

7.     There was juror misconduct.  Doc. No. 1-4 at 67; Doc. No. 1-5 at 2.

8.     Her conviction and sentence should be set aside because–

    a)   certain witnesses gave false and perjured testimony (Doc. No. 1 at 10, 41, 43, 66; Doc. No. 1-1 at 14; Doc. No. 1-4 at 64);

    b)   she was falsely arrested and her sentence and charge were illegal (Doc. No. 1 at 10, 65; Doc. No. 1-5 at 3); and

    c)   the records related to her case – including the original arrest warrant – were falsified (Doc. No. 1 at 65; Doc. No. 1-1 at 17; Doc. No. 1-5 at 31-35).

9.     She should have been allowed to argue self-defense (Doc. No. 1 at 28).

10.     The prosecution suppressed the victim's medical records in violation of *Brady v. Maryland*.  Doc. No. 1 at 5, 24-25, 43; Doc. No. 1-4 at 5.

11.     Her trial counsel rendered ineffective assistance by–

    a)   failing to investigate her case, subpoena witnesses she asked counsel to subpoena, and request a continuance or bench warrants to secure the appearances of those witnesses (Doc. No. 1 at 5, 7; Doc. No. 1-2 at 10, 18, 31);

    b)   failing to challenge the fact that only one African-American sat on the jury (Doc. No. 1 at 5, 7; Doc. No. 1-2 at 31);

    c)   failing to request exculpatory evidence (Doc. No. 1 at 7, 43; Doc. No. 1-2 at 31-32);

    d)   failing to warn certain witnesses of the consequences of committing perjury (Doc. No. 1 at 7; Doc. No. 1-6 at 40);

e)   failing to object to the trial court's error in instructing the jury on reckless murder (Doc. No. 1 at 7-8; Doc. No. 1-2 at 32);

f)   failing to object to a police officer's testimony about the victim's injuries (Doc. No. 1-2 at 6-7);

g)   failing to object to improper evidence, specifically, photographs of the victim while she was in the hospital (Doc. No. 1-2 at 32);

h)   failing to present evidence regarding the victim's behavior in the hospital after the attack (Doc. No. 1-2 at 8);

i)   failing to present expert witness testimony on her behalf (Doc. No. 1-2 at 33-34);

j)   failing to request transcripts of certain grand jury testimony (Doc. No. 1-2 at 35); and

k)   failing to investigate Tullis's mental condition or request that she undergo a mental evaluation (Doc. No. 1 at 5, 7; Doc. No. 1-5 at 2-3).

12.   Her appellate counsel rendered ineffective assistance by–

a)   failing to present certain facts and evidence about which Tullis informed her (Doc. No. 1 at 6-7);

b)   failing to argue that the State's witnesses "all gave contradicting testimony at trial and [in the] offense report" (Doc. No. 1-6 at 40);

c)   failing to discuss on appeal exculpatory evidence regarding the victim's credibility (Doc. No. 1-2 at 31);

d)   failing to argue certain claims later found to be precluded during Tullis's Rule 32 proceedings (Doc. No. 1 at 6-7; Doc. No. 1-6 at 40-41);

e)   failing to raise an argument regarding the victim's conduct at the hospital after the attack (Doc. No. 1 at 6-7; Doc. No. 1-2 at 7);

f)   failing to raise a claim regarding the trial court's erroneous jury instruction on reckless murder (Doc. No. 1-6 at 41);

g)   failing to raise ineffective assistance of trial counsel claims, including a claim regarding the fact that only one African-American sat on the jury (Doc. No. 1-6 at 40-41);

h) failing to apply for rehearing with the Alabama Court of Criminal Appeals (Doc. No. 1 at 6-7);

i) failing to investigate the case (Doc. No. 1-6 at 37);

j) failing to raise a juror misconduct claim (Doc. No. 1 at 7; Doc. No. 1-6 at 40);

k) failing to argue that Tullis's Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated (Doc. No. 1-6 at 41); and

l) acting in bad faith (Doc. No. 1-6 at 40).[7]

The respondents contend that all of Tullis's claims are procedurally defaulted, either because the claims were not presented to the state courts in accordance with the requirements of the state's procedural rules and Tullis cannot show cause and prejudice to excuse her default or that a miscarriage of justice will result if the claims are not reviewed, or because the state appellate court rejected the claims on adequate and independent state procedural grounds. Doc. No. 14 at 23-47. After consideration of the parties' submissions, the record, and the pertinent law, the undersigned finds that Tullis is not entitled to habeas relief and that her § 2254 petition should be denied without an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.   DISCUSSION

### A.   The Procedural Default Doctrine

#### 1.   *The Exhaustion Requirement*

---

[7] Tullis sets forth her claims in an exceptionally disorganized and repetitive manner. For organizational and analytical purposes, the court recasts some of the claims in a more appropriate presentation.

Before a § 2254 petitioner may obtain federal habeas corpus review, he must "exhaust" his federal claims by raising them in the appropriate court, giving the state courts an opportunity to decide the merits of the constitutional issue raised.  *See* 28 U.S.C. § 2254(b)(1) and (c);[8] *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001).  To exhaust a claim fully, a petitioner must "invok[e] one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In Alabama, a complete round of the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to that court, and a petition for discretionary review – a petition for a writ of certiorari – filed in the Alabama Supreme Court.  *See Smith v. Jones*, 256 F.3d 1135, 1140-41 (11th Cir. 2001); Ala.R.App.P. 39 and 40.  The exhaustion requirement applies to state post-conviction

---

[8] Section 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  Section 2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c).

proceedings as well as to direct appeals.  *See Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003).

"[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] ... there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (citations omitted); *see Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003).  The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding."  *Picard v. Connor*, 404 U.S. 270, 276 (1971).

### 2.   *"Adequate and Independent State Ground" for Denying Relief*

Federal habeas review may also be unavailable for claims that a state appellate court has rejected on state procedural grounds. *Coleman*, 501 U.S. at 729. "Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief."  *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992).

> By its very definition, the adequate and independent state-ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.  *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935).  Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.  In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

### 3.   *Exceptions for Procedurally Defaulted Claims*

This court may reach the merits of a procedurally defaulted claim only in two narrow circumstances:

> First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); [*Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977) ].... Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id*.

*Henderson*, 353 F.3d at 892.

### a.   Cause and Prejudice

Cause for a procedural default must ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded efforts to comply with the state's procedural rules or that the procedural default resulted from ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Frady*, 456 U.S. 152, 170 (1982). In this context, to establish prejudice, a petitioner must show that the errors at trial worked to his actual and substantial disadvantage, "infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170; *see Murray*, 477 U.S. at 494.

### b.   Actual Innocence

Demonstrated actual innocence may trump a procedural bar in a habeas proceeding to provide a gateway to federal review of an otherwise defaulted § 2254 claim. *See Murray*, 477 U.S. at 495-96; *Rozzelle v. Secretary, Florida Dept. of Corrections*, 672 F.3d 1000, 1011 (11th Cir. 2012); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

In *Schlup v. Delo*, 513 U.S. 298 (1995), the United States Supreme Court held that prisoners asserting actual innocence as a gateway to review of defaulted claims must establish

that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." 513 U.S. at 327. "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

As the Supreme Court in *Schlup* observed:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare... . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

## B.   Tullis's Procedurally Defaulted Claims

### 1.   *Challenge to Sufficiency of the Evidence*

Tullis claims that the evidence was insufficient to sustain her conviction for attempted murder. Doc. No. 1 at 10, 22-23, 40; 58-60, 122; Doc. No. 1-5 at 3. She originally presented this claim on direct appeal. She did not apply for rehearing after the Alabama Court of Criminal Appeals denied the claim in its memorandum opinion. Consequently, she did not exhaust the claim by subjecting it to a full round of appellate review in the Alabama courts. She can no longer raise the claim in the state courts, as it is too late for her to do so in an application for rehearing in the direct appeal stage of the proceedings and it would be procedurally barred on several grounds if asserted in a Rule 32 petition. *See, e.g.*, Ala.R.App.P. 40(c); Ala.R.Crim.P. 32.2(a)(2), 32.2(a)(4), and 32.2(c). Because Tullis can no longer present this claim in the state courts, it is procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891.

17

Furthermore, Tullis makes no argument to satisfy the rigorous standard to establish "cause and prejudice" excusing her procedural default.  While she asserts – as a substantive claim in her § 2254 petition – that her appellate counsel was ineffective for failing to apply for rehearing with the Alabama Court of Criminal Appeals, *see* Doc. No. 1 at 6-7, applications for rehearing and petitions for writ of certiorari concern discretionary review under Alabama law, *see Kinsey v. State*, 545 So. 2d 200, 2003 (Ala. Crim. App. 1989), and a criminal defendant does not have a constitutional right to counsel to pursue discretionary review.  *Wainwright v. Torna*, 455 U.S. 586, 587 (1982); *Ross v. Moffitt*, 417 U.S. 600 (1974).  Because she had no constitutional right to counsel at the rehearing stage of direct review, she could not be deprived of the effective assistance of counsel at that stage.  *Torna*, 455 U.S. at 587-88.  Thus, her appellate counsel's failure to apply for rehearing does not establish cause excusing her failure to exhaust her challenge to the sufficiency of the evidence.

Nor does Tullis demonstrate her actual innocence to overcome application of the procedural bar to her claim.  She presents no new reliable exculpatory evidence.  *Schlup*, 513 U.S. at 324.  Rather, she presents essentially the same evidence and argument the jury heard and rejected.  This falls far short of what is required under *Schlup*.  Therefore, Tullis's challenge to the sufficiency of the evidence is foreclosed from federal habeas review.

### 2.   *Claims Rejected on Adequate and Independent State Procedural Grounds*

The Alabama Court of Criminal Appeals found the following claims in Tullis's Rule 32 petition – and reasserted by Tullis in her § 2254 petition – to be procedurally barred under Ala.R.Crim.P. 32.2(a)(5), because they could have been, but were not, raised on direct appeal:

> 1.   Tullis's double jeopardy rights under the Fifth Amendment were violated because she was indicted twice for the same offense and her bond was raised in the second indictment.

2.      The trial court erred by instructing the jury on reckless murder.

3.      Tullis's Sixth Amendment rights were violated because only one African-American sat on the jury.

4.      Tullis's Eighth Amendment rights were violated because her sentence was unduly harsh.

5.      Tullis's equal protection rights were violated because she was charged and sentenced differently from other persons similarly situated.

6.      There was juror misconduct.

Doc. No. 14-17 at 4-5.

The state appellate court's application of Ala.R.Crim.P. 32.2(a)(5) constitutes an adequate and independent state procedural ground. *Harris*, 489 U.S. at 264 n.10; *see Brownlee v. Haley*, 306 F.3d 1043, 1065-66 (11th Cir. 2002) ("If an Alabama court has denied post-conviction relief based on the petitioner's failure to raise a claim at trial or an direct appeal, a federal Court cannot review that claim unless" the cause-and-prejudice or actual-innocence exception applies). Again, Tullis makes no argument to satisfy the standard of cause and prejudice. Based on the pleadings, documents, and records filed in this case, this court finds that Tullis has not established the existence of any "objective factor external to the defense that prevented [her] from raising the claim[s] and which cannot be fairly attributable to [her] own conduct." *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) (citing *Murray*, 477 U.S. at 488). Because Tullis does not establish that either the cause-and-prejudice or actual-innocence exception applies to the above-listed claims, the claims are procedurally defaulted and foreclosed from federal habeas review.

### 3.   *Other § 2254 Claims Not Raised by Tullis in the State Courts*

The following claims in Tullis's § 2254 petition were not raised in the state courts, either on direct appeal or in her Rule 32 petition; they were all raised for the first time in the instant petition for federal habeas relief:

1.  Tullis's trial counsel rendered ineffective assistance by−

    a)  failing to investigate her case, subpoena witnesses she asked counsel to subpoena, and request a continuance or bench warrants to secure the appearances of those witnesses;

    b)  failing to challenge the fact that only one African-American sat on the jury;

    c)  failing to request exculpatory evidence;

    d)  failing to warn certain witnesses of the consequences of committing perjury;

    e)  failing to object to the trial court's error in instructing the jury on reckless murder;

    f)  failing to object to a police officer's testimony about the victim's injuries;

    g)  failing to object to improper evidence, specifically, photographs of the victim while she was in the hospital

    h)  failing to present expert witness testimony on her behalf; and

    i)  failing to request transcripts of certain grand jury testimony.

2.  Tullis's appellate counsel rendered ineffective assistance by−

    a)  failing to present certain facts and evidence about which Tullis informed her;

    b)  failing to raise a juror misconduct claim;

    c)  failing to discuss on appeal exculpatory evidence regarding the victim's credibility;

    d)  failing to argue certain claims later found to be precluded during Tullis's Rule 32 proceedings;

e)   failing to raise a claim regarding the trial court's erroneous instruction on reckless murder;

f)   failing to argue that Tullis's Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated;

g)   failing to raise ineffective assistance of trial counsel claims, including a claim regarding the fact that only one African-American sat on the jury;

h)   failing to argue that the State's witnesses "all gave contradicting testimony at trial and [in the] offense report"; and

i)   acting in bad faith (Doc. No. 1-6 at 40).

3.   Tullis should have been allowed to argue self-defense.

Tullis cannot return to the state courts to litigate these unexhausted claims, as she would find the claims to be procedurally barred under various state procedural rules. Because Tullis can no longer present these claim in the state courts, they are procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891.

Generally, "a petitioner cannot rely on the ineffective assistance of post-conviction counsel to establish cause to excuse a procedural default because there is no constitutional right to an attorney in state post-conviction proceedings." *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) (citing *Coleman v. Thompson*, 501 U.S. at 752). In *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309 (2012), however, the United States Supreme Court recognized a narrow exception to this rule regarding claims of ineffective assistance of trial counsel. The Court held, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 132 S.Ct. at 1320. The Court in *Martinez* was careful to limit its ruling to ineffective-assistance-of-

trial-counsel claims only.  *See* 132 S.Ct. at 1319-20.  The ruling provides no gateway to federal habeas review of attorney errors in other proceedings.  "It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons."  *Id*. at 1320.

Although Tullis does not expressly argue that her lack of counsel during her Rule 32 proceedings constitutes cause for her procedural default of her claims of ineffective assistance of counsel, she seems to suggest that if she had counsel during those proceedings, she could have presented the trial court with her otherwise defaulted claims of ineffective assistance of counsel. *See* Doc. No. 1-2 at 34.  To the extent that Tullis may assert her lack of counsel during her Rule 32 proceedings as cause, under *Martinez*, for her procedural default of her claims of ineffective assistance of trial counsel, she fails to demonstrate the cause and prejudice required to excuse her procedural default.  In *Martinez*, the Supreme Court stated that "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  132 S.Ct. at 1318. This, Tullis has not done. All of Tullis's claims of ineffective assistance of trial counsel comprise conclusory allegations that her trial counsel performed deficiently in some manner.  None of the claims are bolstered by supporting facts and argument. Moreover, Tullis fails to demonstrate prejudice resulting from any instance of her trial counsel's allegedly deficient performance.  Thus, Tullis fails to show that any of her underlying claims of ineffective assistance of trial counsel are "substantial," so as to excuse her procedural default of the claims under *Martinez*.

Tullis also fails to establish that the cause-and-prejudice exception permits review of any of her other above-listed procedurally defaulted claims. Because *Martinez* is limited to claims of ineffective assistance of trial counsel defaulted in the initial-review collateral proceeding (in Tullis's case, the Rule 32 petition), its holding would not extend to Tullis's claims of ineffective assistance of appellate counsel, or to her claim alleging that she should have been allowed to argue self-defense. Tullis does not establish that either the cause-and-prejudice or actual-innocence exception applies to her procedurally defaulted claims; therefore, the claims are foreclosed from federal habeas review.

### 4. *Tullis's Remaining Unexhausted Claims*

The following claims in Tullis's § 2254 petition were asserted in her Rule 32 petition, but were not properly exhausted in the state courts because Tullis did not set them out in her application for rehearing of the Alabama Court of Criminal Appeals' memorandum opinion affirming the trial court's denial of her Rule 32 petition, or in the petition for writ of certiorari she subsequently filed with the Alabama Supreme Court:

1. Tullis's conviction and sentence should be set aside because–

    a) certain witnesses gave false and perjured testimony;

    b) she was falsely arrested and her sentence and charge were illegal; and

    c) the records related to her case – including the original arrest warrant– were falsified.

2. The prosecution suppressed the victim's medical records in violation of *Brady v. Maryland*.

3. Tullis's trial counsel rendered ineffective assistance by–

    a) failing to present evidence regarding the victim's behavior in the hospital after the attack; and

      b) failing to investigate Tullis's mental condition or request that she undergo a mental evaluation.

The exhaustion doctrine requires a habeas petitioner to do more than simply refer vaguely to possible claims; "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Kelley v. Sec., Dept. of Corr*, 377 F.3d 1317, 1325 (11th Cir. 2004) (citation omitted); *Hunt v. Comm., Ala. Dept. of Cor*r., 666 F. 3d 708, 730-31 (11th Cir. 2012). Because federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts[,]" *Picard*, 404 U.S. at 275-76, Tullis's failure to specifically allege and pursue each of her claims through each level of the state appellate process renders them unexhausted. Tullis cannot return to the state courts to litigate these unexhausted claims; she would find the claims procedurally barred under state procedural rules. Because she can no longer present these claim in the state courts, they are procedurally defaulted.

Tullis also fails to satisfy the cause-and-prejudice exception to permit review of these claims. The holding in *Martinez, supra*, does not apply to the two claims of ineffective assistance of trial counsel under this issue because Tullis's defaults occurred when she failed to present the claims properly in the application for rehearing she filed in the Alabama Court of Criminal Appeals or in the petition for writ of certiorari she filed in the Alabama Supreme Court in the appellate proceedings on her Rule 32 petition. As indicated above, *Martinez* is limited to defaults of claims of ineffective assistance of trial counsel that occur at the Rule 32 court level. *See Martinez*, 132 S. Ct. at 1319-20. Because Tullis does not establish that either the cause-and-prejudice or actual-innocence exception applies to her procedurally defaulted claims, the claims are foreclosed from federal habeas review.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case be DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner.  The petitioner is DIRECTED to file any objections to this Recommendation on or before March 25, 2016.  Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.   11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this the 11th day of March, 2016.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge